IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TERENCE OLSEN ISOM,<br><br>Plaintiff,<br><br>vs.<br><br>NEAL WAGATSUMA; PAUL LEMKE,<br><br>Defendants. | CIV. NO. 16-00532 JMS-KJM<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 31 |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 31

## I. INTRODUCTION

On October 20, 2017, then-Hawaii state inmate and pro se Plaintiff Terence Olsen Isom ("Plaintiff") filed a First Amended Complaint ("FAC") against Defendants Kauai Community Correctional Center ("KCCC"), Warden Neal Wagatsuma ("Wagatsuma"), and Adult Correctional Officer ("ACO") Paul Lemke ("Lemke") (collectively, "Defendants") in their individual capacities, alleging a claim pursuant to 42 U.S.C. § 1983 for violation of his First Amendment right to "send and receive mail." ECF No. 29. Before the court is Defendants' unopposed Motion for Summary Judgment. ECF No. 31. For the reasons set forth below, the Motion is GRANTED.

## II.  BACKGROUND

**A.  Factual Background**

Upon his admission as a pretrial detainee to KCCC, Plaintiff was given the Inmate Orientation Packet and correspondence list that are provided to all inmates housed at KCCC.  Defs.' Concise Statement of Facts ("CSF") ¶¶ 1, 3, 5-6.[1]  The Inmate Orientation Packet provides inmates with information about KCCC's correspondence policies and procedures and information about services available to assist pretrial detainees with business and financial matters.  *Id.* ¶ 2. Inmates are required to submit for approval a list identifying the name, relationship, and address of each person with whom the inmate wishes to correspond while at KCCC.  *Id.* ¶ 3.  The KCCC correspondence list includes a policies section specifying that "[f]ormer inmates, parolees, probationers and other persons having pending charges against them will not be approved for correspondence unless written permission is acquired from the Branch Administrator."  *Id.* ¶ 4; Defs.' Ex. D.

As alleged in the FAC, Plaintiff submitted the name of his girlfriend, Kimberly Oakes, to be included on his approved correspondence list.  FAC at 2.

---

[1] Plaintiff failed to oppose the facts set forth in Defendants' Concise Statement of Facts. Thus, the court deems those facts admitted.  *See* Fed. R. Civ. P. 56(e); Local Rule 56.1(g) ("For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party.").

On June 20, 2016, Wagatsuma approved Plaintiff's request to correspond with

Kimberly, who had just been released from KCCC custody on June 17, 2016.

Defs.' CSF ¶ 7. Thereafter, a KCCC record clerk informed Wagatsuma and

Lemke that Plaintiff and Kimberly were codefendants in a pending criminal action

and therefore, Plaintiff was not permitted to correspond with Kimberly without

written approval from Wagatsuma. *Id.* ¶ 8.

Lemke then retrieved a letter Plaintiff wrote to Kimberly and

submitted for mailing. *Id.* ¶ 9. Lemke returned the letter to Plaintiff indicating that

permission to correspond with Kimberly was denied because she was a

codefendant and former inmate and therefore, in order to correspond with her,

Plaintiff needed written permission from the Branch Administrator. *Id.* Plaintiff

did not submit a new request to correspond with Kimberly. *Id.* ¶ 10.

Plaintiff then submitted a request to correspond with Kristen Oakes.

*Id.* ¶ 11. In mid-July 2016, Lemke reviewed incoming mail from Kristen, and

mistakenly thinking the letter was from Kimberly, marked it "Return to Sender,"

informed Plaintiff, and placed the letter in the outgoing mail. *Id.* ¶ 12. Plaintiff

explained that Kristen was not a codefendant, and on July 15, 2016, Lemke opened

the envelope for screening. *Id.* ¶¶ 13-14. Lemke determined that the envelope

contained a letter written by and pictures of Kimberly. *Id.* ¶ 14. Lemke took the

letter to Plaintiff, who admitted that it appeared to have been dictated to Kristen by

Kimberly.  *Id.* ¶ 15.  Lemke told Plaintiff that he could not correspond with

Kimberly through Kristen or another party, took back the letter, and again placed it

in the outgoing mail.  *Id.*

On October 13, 2016, Wagatsuma received a letter from the Kauai

Drug Court informing him that the court had directed Kimberly to have no contact

with Plaintiff while in the Drug Court program.  *Id.* ¶ 17.  Wagatsuma showed that

letter to Plaintiff and explained that he would not allow Plaintiff to correspond with

Kimberly until permitted by the Kauai Drug Court.  *Id.* ¶ 18.  Plaintiff exhausted

the grievance process with respect to his inability to correspond with both

Kimberly and Kristen.  FAC at 2-3.

Plaintiff filed his initial Complaint on September 26, 2016.  ECF No.

1.  On April 3 and June 1, 2017, Plaintiff filed Notices of Change of Address,

indicating that he is no longer incarcerated at KCCC.  ECF Nos. 13, 20.  On July

18, 2017, Defendants filed a Motion for Judgment on the Pleadings.  ECF No. 22.

On September 18, 2017, the court granted the Motion and dismissed the Complaint

with leave to amend.  ECF No. 28. On October 20, 2017, Plaintiff filed the FAC.

ECF No. 29.

As alleged in the FAC, because Defendants denied Plaintiff

permission to correspond with Kimberly or Kristen, Plaintiff was unable to give

Kimberly "power of attorney so that she could handle [Plaintiff's] financial

matters." FAC at 3. Plaintiff's inability to convey power of attorney to Kimberly resulted in "several thousand dollars of debt and damage to [Plaintiff's] credit." *Id.* In addition, Kimberly was unable to get a key made to recover Plaintiff's vehicle from a public parking area, resulting in the vehicle being vandalized and all of Plaintiff's personal belongings being stolen or destroyed. *Id.* This, and his lack of contact with Kimberly, caused Plaintiff to suffer mentally and emotionally. *Id.*

## B. Procedural Background

On January 31, 2018, Defendants filed the instant Motion for Summary Judgment. ECF No. 31. The court issued a minute order setting this matter for hearing on March 29, 2018, and setting deadlines of March 1, 2018 for Plaintiff's Opposition, and March 8, 2018 for Defendants' Reply. ECF No. 33. The minute order and a Notice to Pro Se Litigants (informing Plaintiff of his obligation in responding to the Motion) were served on Plaintiff at his last known address: 45-027 Namoku Street, Kaneohe, HI 96744. *Id.*

Plaintiff failed to file an Opposition. On March 15, 2018, the court ordered Plaintiff to respond by March 22, 2018 "stating whether he intends to oppose the Motion for Summary Judgment and if so, why he failed to meet the March 1, 2018 deadline." ECF No. 34. Plaintiff did not respond. None of the mail from the court was returned as undeliverable. Plaintiff failed to appear for the

March 29, 2017 hearing.  Counsel for Defendants had no information regarding Plaintiff's current address.[2]

## III.  <u>STANDARDS OF REVIEW</u>

### A.    Summary Judgment Standard

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

The moving party "bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Once met, the burden shifts to the non-moving party to "go

---

[2] The court also made an inquiry of the State of Hawaii Department of Public Safety.  It, too, had no information on Plaintiff's current address.

beyond the pleadings" and designate specific facts in the record and/or admissible discovery materials showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial.").

When considering a motion for summary judgment, the court must draw "all reasonable inferences supported by the evidence in favor of the nonmoving party." *Walls v. Cent. Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). The court may not grant summary judgment solely because a party fails to oppose the motion. *Cristobal v. Siegal*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994); *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003). But, when a party fails to challenge the facts asserted by the moving party, the non-moving party is deemed to have admitted the validity of those facts. *See Beard v. Banks*, 548 U.S. 521, 527 (2006) (citing Fed. R. Civ. P. 56(e)); Fed. R. Civ. P. 56(e); Local Rule 56.1(g).

## B.     Qualified Immunity Standard

Government officials are entitled to qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001). When considering a qualified immunity defense, the court must decide: (1) whether the facts alleged,

taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009). This sequence of review is not mandatory. *Pearson*, 555 U.S. at 236. If a plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Or, if the court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end the qualified immunity inquiry at that point without determining whether the allegations make out a statutory or constitutional violation. *Pearson,* 555 U.S. at 236-242.

"A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret

it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

The inquiry "must be undertaken in light of the specific context of the [particular] case, not as a broad general proposition[.]" *Saucier*, 533 U.S. at 201. "Officers are entitled to qualified immunity if they reasonably misapprehend how the law would govern in their particular situation." *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010), *vacated on other grounds*, 563 U.S. 915 (2011), *reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011). Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982).

## IV. DISCUSSION

Defendants argue that Plaintiff's First Amendment rights were not violated and, in any event, that they are entitled to qualified immunity. Because the court agrees that the Defendants are entitled to qualified immunity, it does not address whether Plaintiff's First Amendment rights were violated.

Inmates have a protected First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "[T]he decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. at 401 (1989). But

this First Amendment right is not unlimited. Prisons may issue regulations restricting a prisoner's non-legal mail provided they are "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 409 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Applying the qualified immunity test, the Supreme Court has reminded lower courts, many times, "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. That is, because the ultimate question is whether the particular conduct alleged to be unconstitutional is clearly established, the inquiry must be focused on the specific context of the case. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

Here, the specific context of Plaintiff's First Amendment claim concerns whether KCCC could restrict Plaintiff's correspondence with a codefendant in a pending criminal case, and with that codefendant's sister, acting as a conduit for the codefendant. When Plaintiff filed his Complaint, there was no such clearly established law. In fact, federal courts have long upheld restrictions on inmate correspondence if reasonably related to legitimate penological interests. *See Turner*, 482 U.S. at 89 (upholding prohibition on correspondence between institutions as logically connected to legitimate security concerns). And the court has found no caselaw that would provide KCCC officials with any notice that the specific restrictions placed on Plaintiff violated the First Amendment. Stated

differently, reasonable officials at KCCC would not have understood that they were violating Plaintiff's First Amendment rights. As such, the Defendants are entitled to qualified immunity.

## V. **CONCLUSION**

Based on the foregoing, Defendants' Motion for Summary Judgment is GRANTED. The Clerk of Court is DIRECTED to enter judgment and close this action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 30, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Isom v. Wagatsuma, et al.*, Civ. No. 16-00532 JMS-KJM, Order Granting Defendants' Motion for Summary Judgment, ECF No. 31